Good morning, Your Honors. May it please the Court, my name is Mark C. Humphrey, and my co-counsel Grace Clements and I appear today on behalf of the petitioner, Ms. Candida Cecilia Sanchez-De Cabeza, who is with us in the courtroom today. We are law students and pro bono counsel appearing under the supervision of Andrew Knapp of Southwestern Law School. Your Honors, I would like to reserve one minute of rebuttal time today. How many minutes? One minute. All right, thank you. Ms. Clements and I will address two separate issues. In November 2008, Candida timely appealed an immigration court ruling that she was subject to removal. This was rejected days later due to a procedural defect. Ms. Clements will address that timely appeal. Next, Candida filed a second untimely appeal that the BIA summarily dismissed, and this Court affirmed that dismissal. Then, Candida filed a motion to reopen her case in October 2011, which the BIA dismissed for lack of jurisdiction. I will address the BIA's ruling on this motion to reopen. Your Honors, a simple regulation dictates how the BIA is supposed to adjudicate motions to reopen, plainly stating that the BIA can reopen or reconsider any case on which it has rendered a decision. Despite this unambiguous language, the BIA added limiting language when it decided matter of modenaio in 1974. The BIA declared without explanation that the word decision obviously contemplates a decision on the merits, and decisions reached on any other basis must be reopened with the immigration court rather than the BIA. Counsel, may I ask you, what was the motion to reopen seeking? The motion to reopen was seeking to reopen the appeal based on ineffective assistance of counsel. It was on the basis of lack of jurisdiction that the BIA claimed the lack of authority to adjudicate Candida's motion to reopen. The BIA's action was consistent with its notice to her, right? I mean, they told her that if she wished to reopen, that she needed to do that with the IJ. If she wished to file a motion to reconsideration, that she should do it with them, and that she should observe the strict time limitations in both courts. Yes, Your Honor, that's correct. So the BIA acted perfectly consistently with what it announced it was going to do since 1974. Yes, Your Honor. We have almost 40 years now of consistent BIA action. Well, no, not consistent BIA action. Your Honor, when they added this limiting language, the BIA does not always follow these regulations. In certain cases, even in Mladenio itself, it will announce that it lacks jurisdiction or authority, but then will take up the case on its own certification power. Sure, it can do it sua sponte, but essentially it follows its rules. But it can do it sua sponte, of course. Well, it can do it sua sponte, but the problem with these, the way Mladenio interacts with the BIA's black and white rules at 8 CFR 1003.23b1, that's the, what it says the immigration judge can do. The immigration judge is not allowed to reopen or reconsider anything which the BIA has taken jurisdiction over. I believe the language is that it should pass. BIA didn't take jurisdiction in this case, so that's its point. Well, yes, that is its point. However, the BIA's certification power suggests that it essentially always has jurisdiction when there's an appeal. It suggests no such thing. It suggests that it can certify it if it wants to. But the BIA in the first place, when it made its decision, for good or ill, it didn't take jurisdiction over her appeal. And it told her then, because we're not doing it, if you want to raise anything else, IAC. She really wanted to raise an asylum claim, et cetera. But whatever you want to raise, go to the IJ and do it. Very simple. Yes, Your Honor. That's what it said. It did not take jurisdiction over it. Correct. If you use jurisdiction in an assailant. Well, correct, Your Honor. But the way the BIA uses jurisdiction here is it tries to disclaim any power or authority. This isn't a matter of the BIA's discretion. This is a matter of the BIA claiming itself powerless. It didn't try anything. It just said, look, if you want to file a petition, file at the IJ. That's the place to go. But, Your Honor. That's what we've always said, and that's what we say now. It's not jurisdiction in the big cosmic sense that you can't have jurisdiction, which was a problem in one of our recent cases, where jurisdiction in the whole agency, everything was squashed by what they had done. That's not this case, is it? No. It was just a question of where are you supposed to file your papers, which I suppose one could still do. Well, Your Honor, but the way in theory. But the way that these rules interact under Auer v. Robbins in looking at how much deference should be given to an agency, the way that the rule is written, the rule very plainly says the BIA can reopen or reconsider any case on which it has made a decision, and the BIA just simply disclaims jurisdiction here, which under this Court's recent decision in Irigoyen-Briones v. Holder, the Court, it's a different case. The facts are different. However, the reasoning is instructive because in Irigoyen-Briones, this Court said that the BIA can't disclaim jurisdiction over a late appeal. It doesn't make logical sense that the BIA could then disclaim jurisdiction over something filed in Irigoyen-Briones. Why is the BIA even disclaiming jurisdiction? The BIA ultimately has review over the IJ's actions. The BIA was saying if you want to reopen this matter, then take it to the IJ. That's still within the agency's jurisdiction. The BIA hasn't said we're without power to act here. It says take it to the IJ first. But, Your Honor, she took it to the BIA, and then they told her to go back to the immigration judge. Right. But the rules plainly state that once the BIA has taken jurisdiction, and we know the BIA has taken jurisdiction, could take jurisdiction here. The BIA did not. The BIA said we're not taking it. The – it would be very bizarre if the IJ said, oh, gosh, the BIA told you to come and file it here, but I can't do that because the BIA took jurisdiction. And how do I know that? The BIA said we're not taking jurisdiction. That's how I know that. But, Your Honor, they made a finding in order to do that, and the BIA has continually argued that Candida's initial appeal was late, but this Court has said before that the lack of money – Look, why don't you just file with the IJ? That's the question. Because – I mean, that is a practical matter. Never mind – never mind the rest of it. Why not go and give the IJ a whirl? And if the IJ says no dice, then she could appeal that to the BIA, and there we'd be. But, Your Honor, be that as it may, the way that this regulation is – the way that this regulation is interpreted, Your Honor, by the BIA is simply at odds with the purposes of immigration law. Immigration law purports – But we've been doing it for 40 years. But, Your – It seems a little odd that all of a sudden, 40 years later, we would decide that the BIA's been doing it all wrong for all this time. But, Your Honor, this Court decided exactly that in a recent case in Amponsa v. Holder. The Court – this Court overruled the BIA's longstanding decision in a matter of This Court said that that case was not well-reasoned and not considered. And even that case gave more explanation to what it was doing than matter-of-law Deneo did. Matter-of-law Deneo simply announced a new rule and created a distinction between decisions on the merits and decisions for other reasons. Cariaga at least gave some explanation in regards to the purposes of adoption laws and things of that nature. But you still have not answered the question of why you just file with the I.J. And he said, well, because the BIA had jurisdiction. And that's – that's a little bit disingenuous. That's begging the question, actually. Well – The BIA said, no, you've got to file this kind of thing with the I.J. Look, we have jurisdiction. People bring things to us all the time. And we say, go back to the district court first. Raise it there. Get it decided in the district court and then bring it to the court of appeal. Don't ask us to decide that in the first instance. That's what the BIA is doing there. So you still haven't answered the question of why not go file with the I.J. Because the – for one thing, the time limit has passed. But another reason – The time limit had passed by the time she went to the BIA. So let's not talk about the time limit. Okay. Well, the other reason – I mean, the time limit has been passed for years now. Well, correct, Your Honor. But there are many reasons for that. Okay. So why not go to the I.J.? Well, because the way – as I've said, the way the rules are written, it makes appeal – or reopening with the BIA the only possible thing she can do because it says the I.J. can't take jurisdiction over something where the BIA is already. Surely she was not looking at this order and making an hour argument to herself as to why she wasn't going to take it to the I.J. Well, yes, Your Honor. Your client may have decided not to take it to the I.J. because she thought she had a better shot with the BIA. She may have misunderstood the order. There are lots of plausible explanations. But it doesn't seem plausible that she would have decided to stand on an hour principle. Yes, Your Honor. But, again, the rules say that she's supposed to file with the last board, which took jurisdiction and rendered a decision, and that is what she did. And, Your Honors, I would like to leave some time for my co-counsel to speak today.  Thank you. May it please the Court. I'm Grace Clements, appearing under the supervision of Andrew Knapp with case number 1272805 regarding Candida's first timely appeal, which the BIA rejected only because it lacked a filing fee, but then failed to serve Candida with notice of this rejection at her address of record, sending it instead to Candida's former counsel, the law offices of Thomas Tirigo, who was neither authorized by the BIA nor petitioner to represent Candida. Failure to serve process is not a mere technicality. This was a big mistake. But there is a simple solution. The BIA need only serve Candida with proper notice now at her official address in compliance with its own regulations so that she may finally perfect her appeal as she was entitled to do and would have been able to do had the BIA properly served her. Do you know what address was on file with the agency at the time when the notice was sent? Yes, we do, Your Honor. What address was on record? It was her Fourth Avenue address. And we know that. What avenue? What address is that? Is that her residence address or the attorney's address? It was her residential address, Your Honor. We know this because prior to the record at 33, which was the notice of entry of appearance by Thomas Tirigo before the IJ, there was no notice of change of address as required by the BIA. Therefore, the proper place to send any notice by the BIA's own regulation in 8 CFR 1003.13 and 8 CFR 1003.383. Now, Mr. Tirigo did enter an appearance as her attorney, right? To the IJ. But the BIA requires a notice of entry of appearance to be made before each of the IJ and the BIA. And that is important. There are important reasons for this, because this is a group of people who may have a need to, for example, in this case, Thomas Tirigo has been disciplined by this court repeatedly and is, in fact, the subject of ineffective assistance of counsel claims by our client. So there was a reason that she did not want the assistance of Thomas Tirigo. Yet the BIA disregarded their own regulations and in violation of their regulations requiring that a notice of entry of appearance be submitted if she wanted petition or wanted representation that she would be considered pro se. This court held in seeing the INS where there was a mirror image of a case where the petitioner actually wanted notice to be sent to his attorney but failed to submit a notice of entry of appearance. And this court held this case is a little different because there had been a notice of entry by the attorney at the IJ level. And until that's changed, that's presumed to be the person who's to get noticed, isn't it? No, Your Honor. In 8 CFR section 1003.3A3, it specifically, it specifies that there must be a new notice of entry of appearance before the BIA, that this does not carry over from the IJ. But let me ask you a question. If there is a notice of appearance before the IJ and nothing else ever happens and there is a notification to be sent to the petitioner, what's your view on where the notice should be sent? If nothing else ever happens, Your Honor, it should be sent to the notice. If it has remained with the IJ, then it should be sent to the counsel. But in this case, something did happen. Is her notice of appeal for November 2008 notice of appeal in the record? Yes, Your Honor. It's November 14, 2008. I'm sorry. What page is it? That's in the record at 16. She reintroduced that to the record because it never made it to her. You can see in the record at 16 in the BIA's rejection that the BIA has her name listed, Candida Cecilia Sanchez de Cabeza, above an Olive Street address, which was the address that you can see in the record at 33 as the law offices of Thomas Tirigo. So even if the BIA had meant to send it to counsel, they made a mistake. They did not have the notice of appeal. I'm sorry. Page 16 is the rejection of her appeal. Where is her notice of appeal, her November notice of appeal? Yes, Your Honor. The BIA has a practice of returning any appeals that they do not, that they are rejecting in the practice manual at 2.2. I'm just trying to find it in the record. I asked you where the November appeal was. Is that in the record? No, it is not, Your Honor. It's not in the record. Okay. So it's not at page 16. I'm sorry. No, I thought you meant the rejection. No. The rejection is in the record. The original appeal is not in the record. We don't have the original notice of appeal. We do not. So we don't know what address was put on it? We don't, but that's irrelevant, Your Honor, because the BIA's own regulations stipulate that it does not matter what address is on an appeal, on a letter, on any other pieces of information submitted to the BIA. The BIA is normally on the other side of this argument. The BIA wants to enforce its own regulations. In this case, it violated its regulations and is trying to argue that that is okay and that should not be okay. This Court held in Singh v. INS that the BIA has a substantial interest in adhering to these rules, and that includes eliminating ambiguity about where to send notice as well as allowing a quick scan of the document. But why wasn't this problem raised in its first appeal to this Court? Because it was dealing with a separate appeal, Your Honor. This was the first appeal that was submitted November 14th, 2008, that the BIA rejected on November 18th but then failed to serve her. Then it was dead, so Candida believed. She went to, through a herculean effort to determine what had happened in her case by filing a Freedom of Information Act request on her own. At that point, she did. And that was the second appeal in June of 2009. That was the second appeal, Your Honor, based on different facts. In fact, this Court held in ---- Could she have raised the problems in that appeal? Technically not as an appeal, Your Honor, because appeals are limited to the facts on the record. And this Court held in Padilla v. Padilla that events that have occurred after briefing to the BIA have been completed are not available for exhaustion of administrative remedies. Well, so then if that's your argument, then she could never raise that, right? That's exactly the problem. She is properly raising it to this Court because Congress has deemed through the Real ID Act and the Zipper Clause of 1252b-9 that this is the proper avenue for bringing questions of law and fact that arise from a final order. This was a functional equivalent of a final order because it gave effect to the immigration judge's underlying order when the expiration ran of her ability to bring questions of law and fact to this Court. So what was the appeal then in June of 2009? It was technically it should have properly been ---- I don't know what it should have been. I want to know what it was. Well, it was about ineffective assistance of counsel. So in 2009, she raised ineffective assistance of counsel to this Court? That was the second appeal, yes, Your Honor. She did. And it was her ineffective assistance of counsel before the BIA? No, Your Honor. It wasn't clear what she was pro se. So it was not clear what she was attempting to do. Okay. But the bottom line is that she did have an opportunity to appeal to this Court in June of 2009 the ineffective assistance of her counsel, presumably in some proceeding before the BIA. This would have been the proceeding on the merits of her case? No, Your Honor. This Court summarily affirmed the second appeal based on his being late, simply that it was 30 days late, and this Court held that it was in 2009. Yeah, I'm still trying to figure out, counsel. You're not addressing my question, so please listen carefully. Okay. I'm asking what was the basis for her appeal? The basis for her second appeal. The one that she filed in June of 2009 that this Court addressed. That basis for the second appeal was ineffective assistance of counsel. Okay. Ineffective assistance of counsel where? Before the IJ, Your Honor. Before the IJ. Okay. And so this was presumably where the IJ dismissed her claims on the merits? I'm sorry. I don't understand your question. Well, the IJ doesn't – the IJ isn't ruling on ineffective assistance of counsel. The IJ is ruling, presumably, that she's not eligible for asylum or that she's not qualified for NACARA or something. Correct. The reason Castro-Cortez held that the proper – I don't care about the cases. Okay. Just answer what was the basis for her appeal? I'm asking a factual question. Yes. It was ineffective assistance of counsel. Okay. Right. And the ineffective assistance of counsel led to what? What kind of a bad result? That she was not eligible for asylum? That she was not eligible for NACARA? It is unclear on the record what her appeal was based on, Your Honor. Her second appeal, I'm not qualified to answer. I can – I can assume, I can try to parse what she was attempting to appeal. It appears to be ineffective assistance of counsel. But how can we then resolve this case if we don't know procedurally what happened? Because we are here to resolve the first appeal, which the BIA made the fundamental error of not – of failing to serve her. This, the second appeal, would never have happened but for the first appeal, and we would not be here on the motion to reopen either. Well, what was the order – what was the order from which she was appealing in June of 2009? What was the date of the order from which she was appealing? The date of the order from which she was appealing? Right. It was October 28, 2008. It was her original order from the immigration judge. Okay. So she – what she tried to do then in June of 2009 was simply take a direct appeal from the IJ to this court and bypass the BIA? I'm sorry. When you said appeal, petition for review to this court or to – Petition for review. That's right. No, Your Honor. This was a petition for review following her unsuccessful second appeal to the BIA. And the second appeal to the BIA was made based on ineffective assistance of counsel. The first appeal to the BIA was never reviewed, which is why we are here today. Granted, it is longer than – is typical, but that is due to the BIA's own failure to serve her. This is a simple solution. She need – the BIA need only serve Candida. The question of it's violating its own regulations, which Singh v. INS has held, that Petitioner should not be penalized for the BIA's failure to comply with terms of Federal regulations. These are not trivial regulations. This is about service of process. All right. Thank you, counsel.  You've exceeded your time. Good morning, Your Honors. May it please the Court. My name is Nicole Murley, and I'm here on behalf of the Attorney General today. I'm first going to address the PFR, the petition for review, from the Board's 2008 rejection notice.  First, the Court left jurisdiction over that notice because, one, it's not a final order of appeal. It was a notice from the Board informing Petitioner that she had a filing defect in her appeal from the BIA – or from the immigration judge's decision. And the filing defect was the failure to have the filing fee? Yes. She failed to submit a filing – or submit her fee or an application for waiver of that fee with the Board. Second, even if that notice were to be construed as a final order of removal, it is untimely by four years. And third, as was pointed out previously, when Petitioner finally did perfect that appeal in February of 2009, when the Board rejected that as untimely, Petitioner filed a petition for review of the Board's May 11, 2009 decision with this Court. It was there that if Petitioner wanted to raise issues of improper service or challenge the untimeliness, that was the area for her to do that. Were those issues raised? Do you know? In her reply to the Government's motion before this Court, I believe there was one sentence where she raised notice. In any event, when we look at the record in this case, there's no indication that the Board violated its regulation or violated its procedure and served Petitioner at the wrong address. In fact, when she perfected her appeal in February of 2009, along with the corrected appeal, she included a change of address form. Nowhere in that appeal did she say to the Board, you sent the original rejection notice to a different address. In fact, it is page 17 of the record. She includes a change of address form. It says her name, the Olive Street address is the old address, which she is saying is her old attorney's address, and then provides her new address. The Board could not have known that the address that she provided to the Board was not her proper address. The record does not speak to there being another address provided to the Board for Petitioner. Sotomayor, so as a practical matter, when a case is terminated before the IJ, and it's now before the BIA, and no attorney has entered an appearance before the BIA, what address is in effect for notice purposes at that point? For this case, it's the address that Petitioner provided the Board. This record is very sparse, and all we have is Petitioner's change of address form. We have, as was mentioned before, the prior attorney's appearance before the immigration judge, but before the Board had the record in front of it from the immigration judge, all it had was Petitioner's notice of appeal. And we don't have the November 2008 notice of appeal, so we have no idea what address was on that appeal. We don't. But what we do know is that when Petitioner did perfect her appeal with the Board, she never raised these claims. She then appealed that decision to this Court, and that was denied. So the 2008 rejection notice is not a final order of removal. It's, in any event, untimely, and her claims would be barred by res judicata because the proper place to address those claims was in front of the Board in the 2009 appeal, and then in front of this Court and her petition for review from that decision. What you're saying is for all we know, when they sent the notice as shown on page 16, that might have been the address they were given. Of course. We have no way of knowing. We don't know the answer. Because Petitioner is not. We don't know that's right. We don't know that that's wrong. We do not know. All right. And just one more point. Petitioner also never asked the Board to reissue the 2008 rejection notice. If she had claimed she had failed to receive that, that would have also been an issue for her to raise to the agency in the first instance. Filing a petition for review four years later of an interim notice is not the proper place for her to raise those issues. I'd like to turn now to the first petition for review that she filed before this Court today. And the Court should deny the petition for review where the Board correctly applied its regulation in finding that it lacked authority to reopen her proceedings. Petitioner failed in 2009 to perfect her appeal from the immigration judge's 2008 decision. Therefore, the authority over the merits of her case has always been with the immigration judge. When the Board issued its 2009 decision, it explained that to Petitioner. It explicitly stated that she should file a motion to reopen with the immigration judge to raise questions. The only motion that it could entertain was a motion to reconsider the very specific untimeliness finding. Petitioner did not do that. Although when it decided the motion, this motion to reopen, when it said you're in the wrong place, it called it jurisdiction. I suppose technically it's not really a jurisdictional question, is it? No. The Board's reference to jurisdiction in denying the motion to reopen is correct, even if it's inaccurate as a matter of diction. The Board is discussing. It's not the right word, is it? Correct. But the Board, according to the regulation, did not have authority over the motion to reopen that she filed. Authority and jurisdiction are two different things, right? As. I don't want to get into that. According to which regulation are you speaking of? There's two regulations. There's the 8 CFR 1003.23b, which describes the immigration judge's authority. 1003 what? 1003.23b, which describes the immigration judge's authority. Correct. And that regulation actually uses the word jurisdiction. Yes. It says, in general, an immigration judge may, upon his or her. I don't have to read it. What's the other? And then the other one is 8 CFR 1003.2a, which discusses the Board's authority over cases. And that regulation states that the Board has authority to exercise or to entertain a motion to reopen over cases in which it's rendered a decision. All right. So that regulation doesn't, does not say they don't have jurisdiction. It just says you have authority to reopen if you've rendered a decision. And then it takes case law or something to say what does rendered a decision mean, correct? Yes. And. But it's not quite exactly correct what the regulation says. It does not say, it does not use the word jurisdiction. But in that regulation, it even discusses the Board's discretionary authority to reopen cases. So we know it has jurisdiction. Right. Yes. But it is. It can still spontaneously reopen. It necessarily has jurisdiction. If. If it has rendered a decision. And in this case, the Board never rendered a decision on the merits of Petitioner's  And so the Board's, the Board has interpreted its regulation and the two decisions, Maldonado and Lopez, which, which through the Attorney General giving the Board power to create procedures before, immigration procedures, it is said that where jurisdiction authority is vested with the immigration judge and not yet vested with the Board, the motion to reopen stays with the immigration judge, not the Board. I mean, if we were to interpret this as Petitioner would ask us to, there would be no finality to, there would be no procedure. You could file a motion to reopen wherever you wanted. The Board could have, be hearing the merits, and you could file a motion to reopen with the immigration judge. You could, there would be no end. The Board's interpretation of its own regulation comports with the statute. It does not violate the regulation. It is not unclear. In fact, both the Board's May 2009 decision and the 2011 rejection of the motion to reopen explicitly explained to Petitioner, if she wanted to file a motion to reopen to raise the asylum claim, the ineffective assistance of counsel claim, the place to do that was in front of the immigration judge. Do you know if anybody has bothered to this day to do that? Is there anything, do you have the records that would show that? I don't. On information and belief, I do not believe that that has happened. There's no further questions. All right. Thank you, counsel. Okay. You exceeded your time. We'll give you one minute for rebuttal. Your Honors, I would like to briefly address one point made by the opposing counsel. The law today does not explain why its holding applies only to cases where an alien's direct appeal was summarily dismissed on timeliness grounds and not due to any of the other grounds for summary dismissal. In matter of Lozada, the court dismissed the, or sorry, did not reopen the asylum claim because a petitioner said that he was going to file a separate briefer statement in support of his appeal. He did not do so. But when the BIA was, they entertained and denied his first motion to reopen without explaining why they didn't lack jurisdiction. They took it up on certification. They're treating similarly situated people differently here. There's no reason why somebody who's being dismissed for timeliness should be treated differently than someone who's being dismissed because they didn't file a statement when they said they would. All right. Thank you, counsel. Thank you. Thank you to both counsel. We are especially grateful for the pro bono assistance of the law students.
judges: Fernandez, Rawlinson, Bybee